CECILE A. BENTON, APPELLEE AND CROSS-APPELLANT, v. JOHN M. BENTON, APPELLANT AND CROSS-APPELLEE.

188 N. W. 2d 685

Filed July 9, 1971. No. 37846.

Lyman & Meister and Howard P. Olsen, for appellant.

Wright, Simmons, Hancock & Hall, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The questions in this case are: First, whether the custody of 13-year-old Donna Benton should be taken from her mother and given to the remarried father, John M. Benton, and second, the amount of the child support award.

The father, John M. Benton, has the burden of proof to show by convincing evidence changed circumstances demonstrating the unfitness of the mother, Cecile A. Benton, to have the custody of Donna, or that the best interests of Donna require a change to the father. Van Eperen v. Van Eperen, 182 Neb. 579, 156 N. W. 2d 147; Boyer v. Boyer, 183 Neb. 226, 159 N. W. 2d 546; Packett v. Packett, 184 Neb. 769, 172 N. W. 2d 86. The trial court's finding of Cecile A. Benton's fitness will not be disturbed in the absence of an abuse of discretion. Boyer v. Boyer, *supra.*

It serves no purpose to recite the evidence in detail. Donna is with her mother, a registered surgical nurse in Wichita, Kansas. The mother, who was earning $650 a month at the Scottsbluff hospital, is taking advanced training (anethesiology) to better her income and presently has a reduced income of $250 per month. Despite her work, the mother is with Donna in the evenings and weekends. Donna's school record has improved since being in Wichita, and the record shows she is an intelligent active girl with an interest in music, friends, and normal school activities. The record is devoid of any proof of lack of discipline, immoral or improper environment, or lack of love, food, clothing, or the normal care to which this young girl is entitled. Attempts to prove isolated incidents of unkempt clothing and uncleanliness

are not convincing. Donna is an intelligent and persuasive witness. She wants to be with her mother. She loves her father but he has alienated her with his abusive and obscene reference to her mother, brother, and sister. Cecile has never run her father down. The Wichita welfare department approves and recommends Cecile's home and the care she gives Donna. On the other hand, a similar investigation of John Benton's new home in Ft. Collins, Colorado, is persuasive that the decision to ask for Donna was not Velma's (the present Mrs. Benton) and there is a serious probability of personality conflict, an almost inevitable problem in adjusting to a stepmother. John, the father, has had a serious alcohol problem, and the record is inconclusive as to a recurrence.

Donna has an older married sister, Karla. A large part of the record is devoted to a "collateral" attack on Cecile's care of Karla. The main objections, it seems, are that she went with and married a boy of Mexican descent, married too young, lived in an apartment separate from the mother, and did not go to college. These are all answered by the fact that Karla's husband is a responsible man, working steadily as a foreman on his job, and the marriage is a happy one.

Motivational patterns collateral to the best interests of a child are sometimes discoverable in the acute bitterness of custody disputes. Cecile, here, is obviously a woman of strength and determination. Despite the confining burdens of her home life, she is continuing her training and education and advancing toward a better job. John, with an income of $650 per month, has the financial burdens of a new wife and home. Cecile has had to resort to the court to collect all, or almost all, of the payments she has received. The past due payments of $60 per month are still substantially in default. In fact, the issues as to custody in this case were raised in response to Cecile's latest court effort to collect arrears of child support. We are invited to speculate that John's concern over Donna's food, clothing, and parental guid-

ance was only stimulated by the threat of compulsion to contribute to her care. Cecile's industry and ability in earning up to $650 per month is urged self-righteously, in effect, as a legitimate reason for such conduct and attitude. We have long held that, independent of the assets of the wife, the father is primarily liable for the support of his children. Trautman v. Trautman, 184 Neb. 202, 166 N. W. 2d 415. He may not escape this fundamental human and legal responsibility by remarriage and its consequent financial burdens.

The district court increased the child support award from $60 to $80 per month. Donna is 13 years old now, in junior high school. Judicially noticing the minimal costs of caring for Donna (Trautman v. Trautman, *supra*), under present economic conditions, $80 per month is far less than the actual cost of caring for Donna in any decent and acceptable manner. The burden is still heavy on Cecile, beyond the time and attention required of her. We affirm the increased award of child support in the sum of $80 per month.

Cecile cross-appeals the denial of attorney fees. This case originated as a claim for past due child support. The defeated contentions of John were raised in response. Cecile has had the extra burden of attorney fees to successfully defend these charges. Our cases demonstrate a uniform practice to allow attorney fees to the wife in the absence of unusual circumstances. Trautman v. Trautman, *supra*. Cecile is entitled to attorney fees in district court and in this court. The district court also directed the supervision of the Wichita, Kansas, welfare board over Cecile's home. We find no evidence to support this order and it should be deleted.

The judgment of the district court is modified to allow the plaintiff attorney fees of $300 in the district court and $300 in this court, with costs; the provision as to supervision is deleted; and the judgment as to custody and child support is affirmed.

AFFIRMED AS MODIFIED.